UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

**FILED**

2017 MAY 17 P 2: 50

.ERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |  |
|---|---|---|
| Hia Quach<br>4022 Heatherstone Court<br>Fairfax, VA  22030 | : | |
| | : | |
| | : | |
| Plaintiff | : | Civil Action No.: _1:17CV561-AJT-MSN_ |
| | : | |
| | : | |
| Martin J. Gruenberg, Chairman | : | COMPLAINT |
| Federal Deposit Insurance Corporation | : | JURY TRIAL DEMANDED |
| 3501 N. Fairfax Drive | : | |
|  Arlington, VA   22226 | : | |
| | : | |
| Defendant | : | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, the complaint filed by Hia Quach ("Quach") to correct unlawful employment practices based on sex and harassment. This is also a claim of discrimination on the basis of parental status, under FDIC Directive 2710.4, which implements Executive Order 13152, prohibiting discrimination in Federal employment on the basis of status as a parent (female/pregnancy/caregiver to small children and elderly parents), and to provide appropriate

FILED

2017 MAY 17 P 2:50

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

relief to Quach, who was adversely affected by such practices. Plaintiff, Ms. Quach, alleges that defendant, Federal Deposit Insurance Corporation ("FDIC") subjected Quach to a hostile work environment based on her sex, female, and her status as a parent.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(£)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(l) and (3) ("Title VII") and, Executive Order 13152, prohibiting discrimination in Federal employment on the basis of status as a parent.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Virginia, Alexandria Division.

## PARTIES

3. Plaintiff, Hia Quach, is a resident of Fairfax County, Virginia and was at all times complained of herein an employee of the Federal Deposit Insurance Corporation located in Arlington, Virginia.

4. Defendant Martin J. Gruenberg, in his official capacity as Chairman of the Federal Deposit Insurance Corporation, has his principal office located in the state of Virginia and in the county of Arlington. Defendant Federal Deposit Insurance Corporation is a Government corporation established by federal law, Title 12, United States Code, Section 1811, headquartered in Washington, D.C., but with Regional and Field Offices throughout the United

States. Pursuant to Title 12, United States Code, Section 1819(a), defendant FDIC is empowered "[t]o sue and be sued, and complain and defend, by and through its own attorneys, in any court of law or equity, State or Federal." Defendant FDIC is an "Executive agency" for purposes of Title 5, United States Code, Section 105.

## STATEMENT OF CLAIMS

5.    More than 180 days prior to the institution of this lawsuit, Quach filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

6.    Since at least December 8, 2015 until June 6, 2016, Quach was subjected to harassment rising to the level of a hostile work environment in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §2000e-2(a)(1) and as follows:

a.    Plaintiff/complainant joined the FDIC on October 7, 2014, as a CG-9 Evaluator for the Agency's OIG. Her position had promotion potential to the CG-12 level. Plaintiff's Assignment Manager/Audit Manager was Audit Manager Lisa Conner. Plaintiff's Evaluations Manager was Evaluations Manager Andrew Michael Stevens. The organizational chart represents Mr. Stevens as Plaintiff's first-line supervisor. Plaintiff's second-line supervisor was Assistant Inspector General for Evaluations Edward M. Gentry.

b.    When Plaintiff received the job offer from the FDIC, she notified Mr. Stevens that she was pregnant and would take maternity leave when her child was born. Based on this, Plaintiff's first assignment was an audit job which allowed her to take maternity leave. Plaintiff's second daughter was born in DOB 2014, and she took four weeks of maternity leave after that.

A 3

c.      When Plaintiff returned to work after her maternity leave, Mr. Stevens informed her that she could use the nursing room in the office's health clinic as a private location where she could pump breast milk. Plaintiff preferred to just use her own office, and does not indicate that any problems resulted from this.

d.      Plaintiff was advised by her doctor that she needed to stay hydrated during her pregnancy, and while nursing. To accomplish this, Plaintiff routinely took three large cups of ice from the office's cafeteria. Since the cups were cold, Plaintiff would double each cup. She offered to pay for the cups of ice, but the cashiers told her that there was no charge for them.

e.      In mid-2015, Plaintiff's management was inclined to grant Plaintiff an early promotion to the CG-11 level. However, in May and June, 2015, Plaintiff's peers raised allegations of misconduct, including offensive remarks, use of profanity, offensive touching, and calling peers at home after work hours. The allegations were investigated and, on October 9, 2015, Mr. Gentry suspended Plaintiff for two calendar days for this misconduct. The investigation of Plaintiff's misconduct also determined that another employee had made offensive remarks, and that employee was issued a Letter of Reprimand.

f.      In October or November 2015, Program Specialist Beverly McGee saw Plaintiff taking several cups of ice from the cafeteria. Plaintiff recalls that Ms. McGee introduced herself as "the OM," but she did not specify she was the Oversight Manager of the contract with Aramark, (The private company responsible for the staffing of the cafeteria) and Plaintiff did not learn that Ms. McGee held that responsibility until later.

g.      Ms. McGee told Plaintiff that she was taking more cups from the cafeteria than she needed. According to Ms. McGee, she also explained that taking resources from the cafeteria affects the FDIC's costs under the contract, so Plaintiff should only take what she

5

needs. Plaintiff recalls telling Ms. McGee that the Aramark cashiers had told Plaintiff that taking the extra cups was fine.

h.       After the conversation with Ms. McGee, Plaintiff continued to take several cups of ice from the cafeteria daily as she had in the past. Ms. McGee spoke with Plaintiff a second time about the issue.  Plaintiff explained to Ms. McGee to speak to the Aramark cashiers about it.

i.       Ms. McGee notified her supervisor, Christine Davis, Chief, Special Services about the issue.  Ms. Davis in turn forwarded the matter to her supervisor, Assistant Director Rex Anderson.  Mr. Anderson contacted Mr. Stephen Beard, the Deputy Assistant Inspector General of the FDIC.  Mr. Anderson told Mr. Beard that the Plaintiff had ignored multiple requests from his staff to stop taking "an inordinate number of cups."

j.       On December 8, 2015, Mr. Stevens and Ms. Trina Petty, Human Resources Supervisor, met with Plaintiff to discuss the issue and the multiple requests Ms. McGee had made for Plaintiff to stop taking extra cups.  During the meeting, Mr. Stevens told the Plaintiff that her actions were unacceptable and were compounded by her dismissiveness towards Ms. McGee, and that OIG employees are held to a higher standard.

k.       Plaintiff sent an email dated December 8, 2015, documenting that she had in fact apologized to Ms. McGee.  In that email, Complainant mentioned that she had been taking the multiple cups of ice "since I was pregnant!"

l.       On December 22, 2015, Mr. Stevens documented that Plaintiff orally asked him if she could be reassigned to a different manager.  Mr. Stevens asked her why, and she replied that she wanted the opportunity to start with a "clean slate" with a manager who would be fair and unbiased to her.  Mr. Stevens denied the request by stating that Plaintiff would need a "good

reason" to support her request.

m.      On January 12, 2016, Mr. Gentry met with Plaintiff. He told her that her employment with the OIG just was not working out, and that she was not fitting in. Plaintiff also recalls Mr. Gentry asking if she could return to her prior place of employment, the General Accountability Office.

n.      After the meeting with Mr. Gentry, Plaintiff spoke to Ms. Conner, her Assignment Manager. Ms. Conner told Plaintiff that senior management would not forget the issues and that Plaintiff would be better off finding employment in the private sector.

o.      On January 28, 2016, Ms. Conner emailed Plaintiff a link to a USAJobs vacancy announcement for an Assessment Specialist position in the FDIC. Ms. Conner wrote in the email "This job looks like it could be right up your alley."

p.      On March 11, 2016, Plaintiff received her mid-year performance review for 2016. Mr. Stevens presented the review in person, with Ms. Conner present via phone. While Mr. Stevens presented the review, the assessment of Plaintiff's performance came primarily from Ms. Conner because Ms. Conner was Complainant's Assignment Manager.

q.      During the mid-year performance review, Mr. Stevens and Ms. Conner informed Plaintiff that her performance was unsatisfactory in all five performance areas. Plaintiff was not given any prior notice that her performance was unsatisfactory. The mid-year performance review was documented in a March 14, 2016 email from Mr. Stevens to Plaintiff. The email summarized Plaintiff's performance deficiencies in each of the five performance areas. Mr. Stevens also referenced the "cafeteria conduct matter" as an example of poor communication. For the performance area "Demonstrates Teamwork," Mr. Stevens wrote that Plaintiff was not working effectively with the Auditor-in-Charge on her assignments, and he also referenced the

7C

"cafeteria incident" as causing embarrassment to the office. Mr. Stevens wrote that Plaintiff had performed poorly in the area of "Demonstrates Responsibility," as evidenced by a poor allocation of time, and the "cafeteria matter."

r.      On March 18, 2016, Mr. Stevens followed up on the mid-year review with an initial outline for a training program designed to develop the skills necessary for Plaintiff to succeed in her position.

s.      On March 23, 2016, Plaintiff sent OIG Senior Human Resources Specialist Helen Springirth an email asking to be reassigned. Plaintiff informed Ms. Springirth that Ms. Stevens was biased against her. Mr. Beard denied the reassignment request, stating "I think there is value in continuity of supervision, generally, and particularly under [Complainant's] circumstances."

t.      On June 6, 2016, Complainant made a request to Mr. Gentry for reassignment. Mr. Gentry denied the request.

u.      The Plaintiff requested a reassignment because Mr. Stevens had expressed hostile opinions about women with children. In particular, this occurred in Twitter posts dated April 19, 2015 and October 19, 2015. The April 19, 2015 message stated, "Reinforcement of my belief that propagation should be regulated." The October 19, 2015 message read, "A wise choice not to have children." Mr. Stevens wrote other offensive messages, including a post dated July 14, 2016, in which Mr. Stevens posted in the Twitter message "Regulate propagation to qualified parents in all economic classes."

v.      On July 24, 2016, Plaintiff left her employment with the FDIC to work for the Federal Emergency Management Agency.

7.      Plaintiff is a member of two protected groups by virtue of her sex and her

parental status. Plaintiff will present evidence and hereby identifies workplace actions or incidents which include, but not limited to: (1) the denial of a career ladder promotion to the CG-11 level in November 2015; (2) the accusation on December 8, 2015, that she was taking an excessive number of cups from the cafeteria; (3) Mr. Gentry's comment to her on January 12, 2016 that she was not a good fit with the FDIC; (4) Ms. Conner's alleged statement on January 12, 2016, that Plaintiff should seek employment in the private sector; (5) the vacancy announcement that Ms. Conner forwarded Complainant on January 28, 2016; (6) the mid-year performance review that Complainant received on March 11, 2016; and (7) the Performance Expectations memorandum dated April 19, 2016. In addition, Plaintiff also alleges that she felt Mr. Stevens was unfair to her because he had posted a number of Twitter messages which Plaintiff believes represent hostility towards parents of young children.

8.    The effect of the practices complained of above has been to deprive Plaintiff Quach of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex, female, and her status as a parent to an infant child for her complaints about employment discrimination.

9.    The unlawful employment practices complained of above were intentional.

10.    The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiff Quach.

**PRAYER FOR RELIEF**

Wherefore, the Plaintiff respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from maintaining a hostile

work environment based on sex and  parental status, or engaging in any other employment practice that discriminates on the basis of sex, and from retaliating against employees who oppose practices made unlawful by Title VIL.

B.      Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for women, and eradicate the effects of its past and present unlawful employment practices.

C.      Order Defendant to make Quach whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of the  unlawful employment practices, including but not limited to reinstatement or front pay.

D.      Order Defendant to make Quach whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to housing expenses, in amounts to be determined at trial.

E.      Order Defendant to make Plaintiff Quach whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem and loss of civil rights, in amounts to be determined at trial.

F.      Order Defendant to pay Plaintiff Quach punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

G.      Grant such further relief as the Court deems necessary and proper in the public interest.

H.      Award the Plaintiff her costs of this action.

109

## JURY TRIAL DEMAND

The Plaintiff requests a jury trial on all questions of fact raised by its complaint.

DATED: May 17, 2017

Submitted by:

*hia quach.*
_____

**Hia Quach,** *pro se*
**4022 Heatherstone Court**
**Fairfax, VA  22030**
**703-786-2012**
quach.hia@gmail.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRIGINIA**
Alexandria DIVISION

Hia Quach
_____
Plaintiff(s),

v.

Martin J. Gruenberg
_____
Defendant(s).

Civil Action Number: _____

## LOCAL RULE 83.1(M) CERTIFICATION

**I declare under penalty of perjury that:**

**No attorney has prepared, or assisted in the preparation of**_____.
                                                        **(Title of Document)**

_____
Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)

**OR**

**The following attorney(s) prepared or assisted me in preparation of** Quach v. Gruenberg
                                                          **(Title of Document)**

Lawrence Manley, Esq.
(Name of Attorney)

700 12th Street, N.W., Suite 700, Washington, DC
(Address of Attorney)

202-499-2141
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

Hia QUACH
(Name of *Pro Se* Party (Print or Type)

hia quach.
Signature of *Pro Se* Party

Executed on: May 17, 2017 (Date)